# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4320 | **DATE** | 4/18/2002 |
| **CASE TITLE** | King vs. Jo Anne B. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant Commissioner's motion for summary judgment is granted (document 11). Plaintiff King's motion for summary judgment or in the alternative for remand is denied. Judgment is entered in favor of defendant.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | APR 2 3 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | /3 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HOWARD KING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 01 C 4320 |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Howard King, who claims to suffer from a combination of impairments including depression, organic mental disorder, and migraines, filed this lawsuit seeking review of the Social Security Administration's decision to deny his claim for disability insurance benefits. Both the SSA and King have moved for summary judgment.

### Facts

King applied for disability insurance benefits under the Social Security Act on January 27, 1994, alleging that he became disabled on December 18, 1993 due to the residual effects of brain surgery. King complains that he suffers from migraine headaches, loss of concentration and memory, lethargy, and knee problems; he further alleges that he suffers from an organic mental disorder, depression, and substance abuse disorder in full remission.

In mid-1989, King was diagnosed with an arteriovenous malformation ("AVM") in the right frontal lobe of his brain. He underwent a craniotomy to remove the AVM on July 25, 1989 and was cleared to return to work on September 8, 1989. In June 1992, King's surgeon, Dr. Mullan at the University of Chicago Hospital, deemed that King had "made a full recovery from the effects of his surgery." Record at 142. Prior to and since the surgery, King has experienced migraine headaches for which he has sought medical treatment and which have been treated with pain medications with at least some degree of success.

King's initial application for disability insurance benefits was denied, as was his request for reconsideration. King then filed a timely request for a hearing before an Administrative Law Judge. ALJ Alan Jonas held a hearing in King's case on May 17, 1995. Just prior to that hearing, on April 12, 1995, King underwent a psychological examination by Dr. Garman, a clinical psychologist, who performed a series of intellectual and personality tests. She diagnosed him with organic brain disease based on her interviews with King, his medical history, and his IQ testing. Record at 262. Dr. Garman also reported, however, that the results of a Bender Gestalt test (which measures the ability to reproduce geometric designs) and the results of a Trail-Making Test (which tests visual-conceptual and visual-motor tracking) revealed no signs of an organic brain impairment. Dr. Garman also diagnosed King with depression and with alcohol and cocaine dependence in full remission. Record at 262. Dr. Garman ultimately concluded that King's impairments fell within the categories of "organic mental disorders;" "affective disorders;" and "substance addiction disorders in full remission." Record at 266.

After reviewing the entirety of the medical evidence, on January 5, 1996, the ALJ denied King's claim. On April 15, 1998, the Appeals Council vacated the ALJ's decision and

remanded with directions to the ALJ to develop the record more fully as to the extent of King's alleged mental impairments.

King testified at a supplemental hearing held on November 10, 1998, as did psychiatrist Dr. Daniel Schiff. At the second hearing, Dr. Schiff testified that Dr. Garman's diagnoses were flawed. Record at 45. He opined that Dr. Garman's assessment of an organic brain disease was contradicted by the results of the Bender and Trail Tests, and that a diagnosis of organic brain disorder based on the information presented to Dr. Garman was improper. *Id.* Dr. Schiff further testified that depression is typically a transient condition that is largely treatable if proper measures are taken; he found no indication in King's records that he had participated in any ongoing treatment for depression. Record at 47. Dr. Schiff also noted the repeated evidence in King's medical records of substance abuse. Record at 44-45. At the conclusion of the supplemental hearing, the ALJ agreed to hold open the record for an additional 28 days to permit the submission of additional evidence. Record at 71.

On January 20, 2000, the ALJ issued a second decision denying benefits to King. The ALJ concluded that King had an "impairment that meets the requirements of an impairment listed in Appendix 1. However, ... the claimant cannot be found 'disabled' ... because the claimant's drug and/or alcohol impairment is a contributing factor material to that finding of disability." Record at 15. The ALJ further concluded that, absent substance abuse, King's alleged impairments did not meet or equal any listed impairment. Record at 21. The Appeals Council subsequently denied King's request for review of the ALJ's January 20, 2000 decision, and the ruling became a final agency decision on April 12, 2001.

**Discussion**

Judicial review of the ALJ's decision is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence in the record to support the findings. 42 U.S.C. §405(g); *see also Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir. 1992). The "substantial evidence" standard "requires no more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995)). In deciding whether substantial evidence exists to support the ALJ's decision, the district court "may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the [ALJ]." *Powers*, 207 F.3d at 434-35. The Court may reverse the ALJ's decision "only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision." *Betancourt v. Apfel*, 23 F. Supp. 2d at 875, 880 (N.D. Ill. 1998) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)).

To be eligible for disability insurance benefits, King must be unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905. In determining whether King suffered from a disability, the ALJ conducted the standard five-step inquiry: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the impairment is severe; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. § 404, Sub. P, Appendix 1; (4) whether the claimant can perform his past work; and (5) whether the

claimant's impairment prevents him from doing other work in the national economy. *See, e.g., Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). But even if the claimant is found to be "disabled," if there is medical evidence of drug addiction or alcoholism the ALJ must decide whether the addiction or alcoholism is a contributing factor material to the determination of disability. *See* 20 C.F.R. §§ 404.1535; 416.935. If so, the ALJ must find the claimant not to be disabled. *Id.*

The ALJ concluded that King had not engaged in substantial gainful activity since the alleged onset of disability and that his impairments are severe. The ALJ further determined that King's impairments meet or equal a listed impairment, but that King's alcohol and drug use were contributing factors material to the finding of disability. The ALJ additionally found that, absent drug and/or alcohol use, the medical evidence did not support a finding of disability. Though King could not perform his past work, the ALJ concluded that he retained the capacity to perform at least unskilled sedentary work.

## I.     *Substantial Evidence*

King first argues that the ALJ's decision is not supported by substantial evidence. King asserts that the ALJ improperly discounted the evaluations of Dr. Garman and Todd Harrison, a clinical social worker, and improperly discounted King's complaints of debilitating pain. King further argues that the ALJ's conclusion that King could perform sedentary work is not supported by substantial evidence. As explained below, we affirm the ALJ's findings.

With respect to the opinions of Dr. Garman and Todd Harrison, the law is clear that ALJs have wide discretion to accept or reject medical testimony. *See, e.g., Butera v. Apfel*, 173 F.3d 1049, 1056-57 (7th Cir. 1999) (affirming an ALJ's decision to reject a treating

physician's opinion as unsupported by the medical evidence). Criteria relevant in weighing the value of a medical opinion include, among other things, the nature and extent of the treatment relationship, the degree to which other medical evidence supports the opinion, and the consistency of the opinion with the record as a whole. *See* 20 C.F.R. § 404.1527(d); § 416.927(d); *Butera*, 173 F.3d at 1056-57.

In light of these criteria, we do not find that the ALJ improperly discounted the opinions of Dr. Garman and Harrison. Dr. Garman diagnosed King with substance abuse disorder in full remission, an organic brain disorder, and affective disorder (*i.e.*, depression). Record at 262. Todd Harrison also evaluated King and concluded that he suffered from "Major Depression, Recurrent, Severe." Record at 357.

Dr. Garman's diagnoses resulted from a single evaluative session with King, and her conclusions were contradicted by other medical evidence. Contrary to Dr. Garman's conclusion that King's substance abuse was in "full remission," the record is replete with evidence regarding King's ongoing drug and alcohol problems. For example, the medical records reveal treatment for substance abuse in December 1993 through January 1994, Record at 313-316, and October though November 1995, Record at 359, as well as other evidence of recurrent substance abuse, including King's admissions of drinking and drug abuse. *See, e.g.*, Record at 241; 250-258; 352. In addition, Dr. Garman's finding of an organic brain disorder, independent of any substance abuse, was rebutted by Dr. Schiff, who testified that Dr. Garman's diagnosis of organic brain disorder based on King's I.Q. scores was highly questionable and that a more telling indicator of King's mental impairment was the results of the Bender and Trail Making tests, which, even according to Dr. Garman, did not indicate an organic disorder.

Similarly, Dr. Garman's and Harrison's findings that King suffered from depression were controverted by other evidence. Both Dr. Garman and Harrison "treated" King on only one occasion, and their conclusions were based solely on King's own account of his symptoms. Dr. Schiff testified that with proper attention, depression is a highly treatable illness, and that there was no indication in King's records of any serious, ongoing attempt to obtain treatment for depression. *See* Record at 48, 242. Further, Dr. Garman's own report cut against her finding of persistent, non-transient depression: on the day of testing, Dr. Garman reported that King "was very cooperative ... his speech was clear and his thought process was logical .... He mentioned feeling well ... He reacted positively to social reinforcements. When praised for his performance, he smiled and tried his best to achieve." Record at 261.

For these reasons, we find that King has fallen short of demonstrating that the ALJ improperly discounted the opinions of Dr. Garman and Harrison. Indeed, substantial evidence exists to support the ALJ's conclusions rejecting those opinions. As noted above, we may reverse the ALJ's decision "only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision." *Betancourt*, 23 F. Supp. 2d at 880 (citations omitted). Though King can point to snippets of the medical records that might support his case, his evidence does not compel reversal.

King also argues that the ALJ improperly discounted King's own testimony regarding his pain. The ALJ discounted King's claims of disabling pain based on King's demeanor at the hearings and the lack of objective medical support for his claims. As the SSA correctly notes, we must affirm an ALJ's credibility determination unless the claimant demonstrates that it is patently wrong. *See, e.g., Powers*, 207 F.3d at 435. This stringent

standard is appropriate "because hearing officers are in the best position to see and hear the witnesses and assess their forthrightness." *Id.* Though the medical records do show that King has a history of migraine headaches, the records also show that the headaches have been treated with strong pain medication and that King reported to his doctors that the medications had some degree of success. King appears to suggest that he also suffers from disabling pain in his knees. However, King had surgeries to correct his knee problems, and the record does not indicate that these knee problems are either permanent or disabling. In short, we cannot conclude that the ALJ's assessment of King's credibility was "patently wrong," and we therefore decline to disturb that finding.

Finally, King argues that the ALJ improperly concluded that King could still perform a range of unskilled, sedentary work activity. The governing regulation defines sedentary work as involving "no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools ... Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). Again, the record supports the ALJ's conclusion. The medical evidence indicates that King can lift substantially more than ten pounds at a time, *e.g.*, Record at 140, and the record as a whole indicates that King goes about his daily activities without substantial limitation. In short, King has failed to demonstrate that the ALJ's findings regarding his ability to perform sedentary work in the national economy should be reversed.

## II. *Remand to the Appeals Council*

King argues that the case should be remanded to the Appeals Council pursuant to 42 U.S.C. § 405(g) because he has new evidence that should have been considered by the SSA.

-8-

King also argues that remand is warranted because the Appeals Council improperly failed to provide him an exhibit list and hearing tape from the ALJ hearing and refused to permit him to submit additional briefs. Neither contention compels remand.

A reviewing court's power to remand on the basis of new evidence is governed by 42 U.S.C. § 405(g), which requires King to establish that the evidence is new and material to the issues at hand, and that there was good cause for the failure to previously incorporate the evidence into the record. *See* 42 U.S.C. § 405(g); *see also Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993) (to be entitled to Section 405(g) remand, plaintiff must meet the requirements of newness, materiality, and good cause). King's new evidence, which is attached to his motion for summary judgment, includes, among other things, a November 1998 diagnosis of osteoarthritis (made the same day as the ALJ hearing) and treatment for knee problems in May and August 1999. King has failed, however, to demonstrate the requirements for remand under § 405(g).

As an initial matter, evidence is "new" if it was not in existence at the time of the administrative proceedings. *Sears v. Bowen*, 840 F.2d 394. Here, at least some of the evidence was in existence prior to the hearing or, at the very least, during the time that the ALJ specifically held the record open for further submissions. King also has failed to show that he had good cause for failing to previously incorporate this evidence in the record. All of the evidence predates the ALJ's decision denying King's claim. Though some of the evidence postdates the hearing, King made no attempt to bring this material to the ALJ's attention following the hearing, either during time the ALJ held the record open, Record at 71, or thereafter. Accordingly, King's request for remand fails without consideration of the issue of materiality. *See Sample*, 999 F.2d

at 1144 (claimant not entitled to remand; her additional evidence was "not fairly characterized as new" because the medical evidence was available prior to the ALJ's decision and she failed to demonstrate sufficient reason for failing to submit the evidence to the ALJ).

More importantly, King has not shown that his evidence is material to the issues at hand. "Evidence is material if there is a reasonable possibility that it would have changed the outcome of the Secretary's determination." *Sears*, 840 F.2d at 400. Here, if anything, the evidence tends to further undermine King's claims. For example, the records contain admissions of King's continued drinking. With respect to the problems that King claimed to have with his knees, the documents further indicate that the injuries were not disabling – they showed that King could walk three miles without difficulty. Accordingly, King is not entitled to remand under 42 U.S.C. § 405(g).

King next argues that his constitutional due process rights were violated (and thus he is entitled to a remand) because the Appeals Council failed to provide him with exhibits and a hearing tape from the ALJ hearing so he could determine what additional evidence to file and failed to permit him to file additional briefs. We agree that the C.F.R. sections cited by King indicate that he should have been given the opportunity to obtain the exhibits and a tape of the hearing and to submit additional briefs. However, we do not agree with King that this failure rose to the level of a constitutional due process violation, or indeed anything more than harmless error.

In support of his argument, King cites 20 C.F.R. § 404.973, which provides for notice and an opportunity to be heard if the Appeals Council, on its own motion and absent a request from the parties, seeks to review a case. *See* 20 C.F.R. § 404.973. King further cites

*Welch v. Sullivan*, 1989 WL 129236, No. 88-6017 (W.D. Mo., Oct. 30, 1989), a case in which a disability claimant was given no notice before the Appeals Council reopened and reversed a favorable ALJ award. The clear thrust of *Welch* and the cases it cites, however, is that due process concerns may be implicated where a claimant receives *no* notice that a favorable disability decision has been placed in jeopardy: "reversal without a notice which occurs long after a claimant would legitimately believe that his administrative proceedings are concluded and that his benefits are secure ... violates ... procedural due process." *Id.* at * 3. That is not what occurred here.

Further, Seventh Circuit case law is contrary to *Welch*. *See DeLong v. Heckler*, 771 F.2d 266 (7th Cir. 1985). The claimant in *DeLong* appealed an award of benefits on the sole ground that the benefits were not generous enough. The Appeals Council never provided notice of its intent to review the case; the Council subsequently reversed the grant of benefits entirely. In affirming that decision, the Seventh Circuit noted that "it would be a quite pointless exercise in shuffling paper for the Council, having received the claimant's notice of appeal within 60 days, to then have to issue its own notice of intent to review the case." *Id.* at 268.

Ultimately, however, the question of whether a *successful* claimant's due process rights are violated is not at issue in this case. King had been denied benefits before the ALJ and was fully aware of the Appeals Council review, having requested it. King also complains that he was not given the opportunity to offer additional evidence to the Council. The applicable regulations, however, clearly provide that King should have presented any additional evidence to the Appeals Council at the time he requested review. *See* 20 C.F.R. § 404.968 ("You may request Appeals Council review by filing a written request. Any documents or other evidence

you wish to have considered by the Appeals Council should be submitted with your request for review"). Though King argues that he could not discern what to present to the Appeals Council because he was not provided the exhibits and the tape from the ALJ hearing, this argument is unavailing. Both King and his counsel were present at the hearing, and the documents submitted there were largely King's own medical records.

For these reasons, we cannot conclude that King's constitutional due process rights were violated, and we therefore deny King's request for remand on this basis.

### Conclusion

Defendant Commissioner's motion for summary judgment [docket item # 11] is granted. Plaintiff King's motion for summary judgment or in the alternative for remand [docket items # 8-1, 8-2] is denied. King's motion in the alternative for remand is denied. The Clerk is directed to enter judgment in favor of the defendant.

Date: April 18, 2002

_____
MATTHEW F. KENNELLY
United States District Judge